## 4607.  WEBB v. THE STATE.

One can not be convicted of being a common cheat and swindler, under section 719 of the Penal Code, upon proof that in the sale of a mule he represented to the purchaser that the mule's eyes were sound, "so far as he knew," when in fact the mule's eyes appeared to be sound and did not become weak until some three or four months after the sale, and where the only evidence in conflict with the seller's representation is that while he had possession of the mule one person stated to him that, in his opinion, the mule's eyes were unsound. The seller had the right to rely upon his own judgment as to the soundness of the mule's eyes, rather than upon the mere statement of a contrary opinion, made to him by a third person. The fact that a single person had told the owner that the mule's eyes were bad would not be sufficient to show beyond a reasonable doubt that the owner knew or believed, at the time he sold the mule, that its eyes were unsound, unless there was other evidence from which it could be inferred that the seller knew the information he had received to be correct, or believed it to be true.

DECIDED MARCH 18, 1913.

Accusation of misdemeanor; from city court of Elberton—Judge Grogan. December 6, 1912.

*T. J. Brown, C. P. Harris,* for plaintiff in error.
*Boozer Payne, solicitor,* contra.

RUSSELL, J. Webb was convicted of the offense of cheating and swindling, under the provisions of the general code section upon that subject. In the accusation it is alleged that the defendant warranted to Eavenson (the prosecutor) that the mule in question had no eye trouble, and did not have weak eyes, and that Eavenson, relying upon this as being true, whereas the representations were not true, but were wilfully, knowingly, and fraudulently made with intent to deceive him, was induced to purchase the mule; and thereby, because the mule was weak-eyed and worth $75 less than the prosecutor paid for it, sustained a loss of $75. The point is made that there is a fatal variance between the allegation and the

proof, in that the evidence does not show that Webb warranted that the mule had no eye trouble, and only shows that he warranted that the mule did not have weak eyes, so far as he knew. Construing the accusation strictly against the pleader, perhaps the proof that a mere representation as to the soundness of the mule was made could not be held to sustain an allegation that the seller of the mule warranted its eyesight, because the two terms are not really synonymous, though a representation may be the basis of a warranty. The warranty may be made without any representation at all, since the idea of a warranty is that the purchaser is to rely more upon the guarantee of the seller that he will make good any loss which may accrue (if any does accrue) than upon his representing that the article sold possesses certain definite characteristics. However, we do not rule upon this point.

In order to constitute the offense of cheating and swindling, within the provisions of section 719 of the Penal Code, it must appear that the person alleged to have been cheated and defrauded acted upon the representations (if any such representations are alleged) which were made by the accused, and that, by reason of these representations, and not by reason of the exercise of his own judgment, the person alleged to have been defrauded was subjected to loss. In the next place, it must appear that the representations alleged to have been made by the accused were falsely and fraudulently made. It is not sufficient to prove that the representations made by the seller were in fact untrue, if it appears that the alleged cheat in fact believed his representations to be true; and the accusation in the present case alleges that Webb wilfully and knowingly, and with the intent to deceive Eavenson, represented that the mule in question had no eye trouble, and did not have weak eyes. There was no evidence to sustain this allegation of the accusation, except the testimony of the witness Hall, to the effect that after Webb bought the mule, and before he sold it to Eavenson, this witness told Webb that the mule's eyes were not good. According to the evidence, there was no autoptic evidence to confirm the statement of this witness, because, apparently, the mule's eyes were good. The evidence does not disclose the exact length of time that Webb kept the mule before he sold it to Eavenson, but the proof is uncontradicted that, at the time Eavenson bought the mule, even he himself was satisfied, by an examination of the

mule's eyes, that they were apparently sound. The evidence is undisputed that the prosecutor kept the mule for over three months after he purchased it, and it was only when he began to plow with the mule that it developed that the mule's eyes were weak. The evidence is abundant that even after the mule's eyes were found to be weak, and Eavenson had sold the mule, it could have been sold for cash, for $25 more than Eavenson paid to Webb for it.

The jury, then, must have based their verdict upon the fact that the accused did not disclose to Eavenson the fact that the witness Hall had expressed to him the opinion that the mule's eyes were weak or bad. So the question arises as to whether or not the jury were required, or even authorized, to find, from the evidence as to the condition of the mule, that the accused must necessarily have concurred with Hall in the opinion that the mule's eyes were weak, and, therefore, in stating to Eavenson that the mule's eyes were all right "so far as he knew," he was making a false statement. We find nothing in the evidence that would have compelled the accused to entertain the same opinion that the witness Hall entertained in regard to the infirmity of the mule's eyes. Of course, if there had been evidence that the mule's eyes had previously been weak, and that the accused knew this fact from having seen the mule, or if there had been evidence that, during his possession of the mule, the mule's eyes were weak and defective, the accused might, under proper allegations, have been convicted for causing loss by making representations which he knew to be false. It can not be held, however, that because the owner of a mule is informed by a third person that, in his opinion, the animal has a certain defect, which is not apparent, the owner knows that the alleged defect actually exists. Although Hall told Webb that in his opinion the mule's eyes were not good, Webb may have honestly believed that Hall was mistaken; for, perhaps, he himself knew as much or more about mule's eyes than Hall did, and he may have been fixed in his opinion that there was in fact nothing the matter with the mule's eyes. Hall did not point out to Webb any specific defect in the mule's eyes. According to his testimony, he merely told Webb that the mule's eyes were not good. And to show that it was nothing more than an expression of an opinion, he testified that he did not think the mule's eyes were good when his son sold it to Webb. It is clear, therefore, that in Hall's com-

munication with Webb he did nothing more than express his personal opinion as to the soundness of the mule's eyes, without the statement of any fact that might tend to confirm the opinion. It is therefore perfectly reasonable that Webb may have disagreed with Hall and may have been perfectly honest when he told Eavenson that the mule's eyes were, as far as he knew, good. It is certain that the jury could not have convicted Webb except upon proof that he knew that the mule's eyes were not good at the time that he told Eavenson the mule's eyes were all right "so far as he knew;" and it does not appear from the testimony that he had such knowledge, though the opinion of the witness Hall might have been sufficient to put him on inquiry. There was no other evidence upon this point; and for this reason we think the court erred in refusing to grant a new trial.          *Judgment reversed.*